IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CAROLYN AHNER, )
 )
    Plaintiff, )
 )
v. ) Civil Action No. 06-1523
 )
BLACK BROTHERS COMPANY, INC. )
 )
    Defendant. )

MEMORANDUM ORDER

GARY L. LANCASTER,
District Judge.                              May 9, 2008

      This is an action in products liability. Plaintiff, Carolyn Ahner, alleges that defendant, Black Brothers Company, Inc., manufactured a defective gluing machine or "spreader." Plaintiff was injured while cleaning the machine and seeks monetary damages. Defendant has filed a motion to exclude the expert testimony of plaintiff's expert, Dr. Kenneth Knott [Doc. No. 17]. Defendant contends that Dr. Knott's testimony is unreliable within the meaning of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Defendant has also filed a related motion in limine [Doc. No. 64] to preclude Dr. Knott's testimony pursuant to F.R.E. 702.

      On April 25, 2008, the court held a Daubert hearing. The court orally denied defendant's motions to exclude plaintiff's

expert testimony. [See Doc. No. 97]. The court's reasons for its ruling are as follows.

The Federal Rules of Evidence require the trial judge to ensure that any and all expert testimony admitted is "not only relevant, but reliable." Daubert, 509 U.S. at 589. In its discussion regarding expert testimony, the Supreme Court acknowledged the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion' testimony." Id. at 588 (citing Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 169 (1988)). Thus, the Supreme Court intended to expand the use of expert testimony, not restrict it.

Federal Rule of Evidence 702 governs the admission of expert testimony in federal court. Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified by knowledge, skill, experience, training, or education; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact by providing relevant information that is necessary to decide a material fact in dispute. Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008)(citation omitted).

Here, defendant's do not challenge Dr. Knott's qualifications as an expert. Rather, defendant's focus primarily on the reliability prong which requires us to examine Dr. Knott's

2

methodology. The reliability analysis focuses on the principles and methodology Dr. Knott used in reaching his conclusions, not on the conclusions he generated. Daubert, 509 U.S. at 595. The Court of Appeals for the Third Circuit has recently held that, pursuant to the second requirement of Rule 702, "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." Pineda, 520 F.3d at 244 (citations omitted). While a party must make more than a prima facie showing that an expert's methodology is reliable, the Court of Appeals has consistently cautioned that "[t]he evidentiary requirement of reliability is lower than the merits standard of correctness." Id. at 247 (citing Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994)); see also In re TMI Litig., 193 F.3d 613, 665 (3d Cir. 1999)(stating that "the standard for determining reliability is not that high, even given the evidentiary gauntlet facing the proponent of expert testimony under Rule 702" (internal quotation marks and citation omitted)).

In evaluating whether a particular methodology is reliable, a trial court should consider several factors. Pineda, 520 F.3d at 247-248. These factors, set forth in Daubert and in United States v. Downing, 753 F.2d 1224 (3d Cir. 1985), may include: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance

3

of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. Pineda, 520 F.3d at 247-248 (citing Paoli, 35 F.3d at 742 n.8). These factors, however, "are neither exhaustive nor applicable in every case." Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997); Milanowicz v. The Raymond Corp., 148 F.Supp.2d 525, 536 (D.N.J. 2001) (reconfiguring Daubert for application to "technical" or "other specialized" subjects such as engineering and identifying several factors for trial courts to consider in evaluating reliability, including relevant literature, evidence of industry practice, and product design and accident history). In sum, the reliability inquiry of Rule 702 is "a flexible one." Daubert, 509 U.S. at 594.

Applying this flexible standard, we are satisfied that Dr. Knott, a professional engineer, used reliable methodologies in formulating his opinions that defects in the design of the machine contributed to plaintiff's injuries. According to Dr. Knott, the machine was defective because the infeed table guard was not interlocked and because no emergency stop button existed on the machine. In reaching his conclusions, Dr. Knott reviewed numerous materials, including literature, various manuals, industry

4

standards, as well as deposition transcripts in this case. Dr. Knott also examined the machine at issue. Dr. Knott further testified that he used a "hazard analysis" to determine that the probability of the accident occurring was high. A "hazard analysis" involves a risk assessment index or rating regarding the probability of an accident. This methodology is generally accepted in the field of industrial engineering. Given the flexible standard which expands the use of expert testimony, the court finds that these methodologies are reliable. Any dispute between the parties about the strength of the evidence in this case should be resolved by the jury. See Pineda, 520 F.3d at 249.

Defendant's contention that Dr. Knott's opinions should be excluded as unreliable because they are "untested" is not persuasive. Defendant argues that Dr. Knott's opinions are unreliable because he has neither identified nor tested any alternative designs for comparable machines. The Court of Appeals has made clear, however, that the district court should not focus "too narrowly" on an expert's failure either to offer proposed alternatives or to test the effectiveness of those alternatives. See e.g., Pineda, 520 F.3d at 248 (reversing decision to exclude expert testimony finding that expert did not have to develop or test alternative warnings to render an opinion that service manual did not provide adequate instructions). Here, we will not exclude Dr. Knott's proffered expert testimony as inherently unreliable

because he did not identify or test actual alternative designs for the machine. Rather, we find that the method he followed in formulating his opinions is reliable and will assist the jury in determining the material facts in dispute, i.e., whether any defects existed which caused plaintiff's injuries. If defendant wishes to challenge Dr. Knott's expert testimony, it must do so by cross examination and by proffering its own expert to present contrary evidence. Daubert, 509 U.S. at 598.

Accordingly, defendant's motions to exclude plaintiff's expert testimony [Doc. Nos. 17 and 64] are DENIED.

BY THE COURT:

*/s/ [signature]*, J.

cc: All Counsel of Record